## Illinois Central Railroad Company v. Simmons.

1. *Common Carriers—Neglect of Duty—Damages.*—The owner of a lot of cattle, in good condition, desiring to ship them over the plaintiff's road to Chicago in time for the next day's market, delivered them at

the station on its road and they were loaded into cars furnished for that purpose in ample time, if shipped in the usual course of its business, to reach Chicago and be put upon the next day's (Friday's) market. The train in which the car containing the cattle was to be put, reached the station several hours late, and by some neglect, not explained, failed to take the car. Some hours later another train passed without taking it. It then being too late to get the cattle upon the Friday's market, they were unloaded and taken home. The next day the market was lower; a few days later, when the cattle were shipped to Chicago the market was still lower. In an action brought to recover damages, the jury awarded the plaintiff $134. *It was held,* not to be excessive, considering the fall of the market, the state of the weather, and the evidence tending to show that in driving the cattle back and forth and keeping them until they were finally shipped, they shrunk from sixty to seventy pounds, and were also fed ten or eleven bushels of corn a day, worth thirty-five cents a bushel.

**Memorandum.**—Action of assumpsit. Appeal from the Circuit Court of Kankakee County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed December 12, 1893.

## STATEMENT OF THE FACTS.

This suit was brought in the Circuit Court of Kankakee County, by Stephen Simmons against the Illinois Central Railroad Company, alleging that on the 4th day of January, 1893, he loaded twenty-one head of cattle on a freight car of appellant about 11 o'clock P. M., to be shipped from Ashkum, Illinois, to Chicago, Illinois, and that the cattle remained in the car until 7 o'clock the next morning, when he unloaded them, took them back to his home, and kept them at home until the 11th of January, when he re-shipped them, and it is claimed that he lost about $200. Upon the trial of the case the jury gave a verdict for $134, upon which judgment was entered, and the defendant appealed.

### APPELLANT'S BRIEF, WHEELER & HUNTER, ATTORNEYS.

We understand the rule of law to be that a common carrier is bound to carry goods within a reasonable time after they have been received. I. C. R. R. Co. v. McClellan, 54 Ill. 58; I. C. R. R. Co. v. Cobb, 64 Ill. 128; T. W. & W. Ry.

Co. v. Lockhart, 71 Ill. 627; W., St. L. & P. Ry. Co. v. McCasland, 11 Brad. 491.

APPELLEE'S BRIEF, H. L. RICHARDSON AND E. E. DAY, ATTORNEYS.

It was the negligence of appellant in not running its train at 11 o'clock, thus forcing the cattle to remain at Ashkum, that caused the damage. Time tables are not to be treated as mere waste paper. They are offers which become contracts upon acceptance, as in this case, by ordering car and loading for and with reference to 11 o'clock train. Indianapolis R. C. v. Birney, 71 Ill. 391; Denton v. G. N. R. Co., 5 E. & B. 860.

In this case there was a receipt of cattle by appellant in the general course of business, and simply a failure to carry, through negligence, after taking without objection. Where cattle are received, bound to carry. Great Western Ry. Co. v. Burns, 60 Ill. 284.

When the cattle were delivered, it was its duty to ship immediately, or by the first regular train, and to have run the train on its advertised time. Illinois Central Ry. Co. v. Smyser, 38 Ill. 354; Illinois Central Ry. Co. v. Ashmead, 58 Ill. 487.

OPINION OF THE COURT, LACEY, J.

This was an action on the case by appellee against appellant to recover damages for failure to ship within a reasonable time after they were received, twenty-one head of cattle, of appellee, from the village of Ashkum, Ill., to Chicago, Ill., to be sold at the stock-yards on the Chicago market. The cause was tried, and resulted in a verdict and judgment of $134 for appellee, from which judgment this appeal is taken. The facts of the case, as the evidence tended to show, are, that appellee, the owner of twenty-one head of cattle in good condition, desired to ship from Ashkum, Ill., to Chicago, Ill., for sale on the market, and told the appellant's agent on January 4th, he wanted to ship the stock the next night, that would be the night of the 5th of

January—that was Thursday. The cattle were loaded on
the car on Thursday the 5th, at 9.30 o'clock A. M., and set
in on the appellant's side track at 5 o'clock P. M., ready for
shipment. The advertised time of the running of appellant's
regular stock train was, that it passed Ashkum for Chicago
at 11 o'clock P. M. daily, and reached Chicago, Ill., at 6 or
7 o'clock the next morning, in time for Friday's market.
The appellee waited at the depot in Ashkum for the train,
intending going in it, with his stock; that the stock-train
was behind time, and did not arrive at Ashkum at 11 o'clock
P. M., but passed that place at 5 o'clock the next morn-
ing, and by some neglect, not explained, failed to take
appellee's car load of stock; at 7 o'clock A. M. the appel-
lant's train, called the banana train, came along and was
ordered by appellant's station agent to take the car load of
stock in question. At first he said he could not do it, could
not haul them, but afterward proceeded to make the at-
tempt, but delayed so long that the stock would not arrive
in Chicago in time for Friday's market. Appellee asked
the station agent, as he was not going to get them in for
Friday's market, if he had not better unload them and take
them home, and the agent replied that he could do as he
pleased; thereupon appellee unloaded his cattle and took
them home and kept them until the 11th of January, Wednes-
day of the next week, when he again re-loaded them on
appellant's cars, and shipped them to Chicago, and sold them
on the Chicago market. The cattle weighed at that time 870
pounds each, and he recovered $3.50 per hundred. The evi-
dence tended to show, that on Friday, the 6th of January,
cattle of the grade of those of the appellee's brought $3.75
per hundred pounds, and that of Saturday, the 7th, the
earliest time the cattle could have been put on the
market if appellee had shipped them on the banana train,
the price of like cattle was from fifteen to twenty-five cents
less per hundred. The weather was very cold, and the evi-
dence tended to show that in driving the cattle back and
forth, and keeping them till the 11th, they shrunk from
sixty to seventy pounds each, and on account of shrinkage

would not bring so much on the market; that they sold as butcher's stock; also that he fed them ten or eleven bushels of corn per day, worth thirty-five cents per bushel.

The judgment seems a trifle excessive of what this court might have found, but we can not say that the jury was not authorized in its assessment of damages against appellant.

Counsel for appellant objects to the first instruction given for appellee as erroneous, and particularly because it instructs the jury that appellant was bound to take the stock on the eleven o'clock train. The instruction, however, does not so direct except on the hypothesis that the appellant "should have" done so, *i. e.*, that it was its duty.

The contention of the appellee is that it was the duty of the appellant to take the stock "in a reasonable time after it was loaded for shipment" and that it was not confined to any particular train.

The instruction does not seem obnoxious to that objection. Other instructions supply and fix the time when the appellant "should" take the stock, or the time, under the evidence, it was its duty to take it. It is also objected that other of the appellee's instructions are faulty, in telling the jury that if appellant "agreed to take the stock at any specified time or advertised its trains to go at any particular time, then in law it was bound to take the stock at that particular time." The contention of appellant's counsel is that the law only required a common carrier to carry the goods within a reasonable time. That, as a general proposition, is correct. But on the trial appellant seemed to take the same view of the law in reference to an agreement to carry at a time agreed upon, as did appellee, for he so limited his instructions. His first instruction told the jury that, though there was an agreement to carry on the night of the 5th and the appellee failed to let his cattle go on the 7th and no damages would have accrued to him in such case, then there would be no recovery.

This seems sound, though the instruction admits, inferentially, the binding force of the agreement in the event the

cattle could not have been sold for as good a price on the 6th as 5th of January.

The second of the appellant's instructions explicitly admits the binding force of the agreement, if one had been proven, to carry the stock on the 5th, and the appellant's liability for damages, and tells the jury that the measure of damages, if 'appellee had an opportunity to send the stock the next morning, would be the difference between what he could have got on the 5th and 6th, and if no difference, no damages. The 5th instruction for appellant states the rule to be that the shipment need only be made in a reasonable time after the stock was received, but excepts the case where there was "no special contract between the parties in relation to the time of starting or of its arrival at Chicago."

The appellant's instructions admit the law as fully on the binding force of a contract as those of the appellee; in such case, even if the jury were misdirected by the court, it was done as much at the instance of appellant as of appellee, and it is therefore estopped, as has been many times held by both this and the Supreme Court, from insisting on such alleged error in the Appellate Court. As to the advertisement of the time of the regular stock train, it will be observed it is only evidence of a contract upon stock being delivered for shipment on the faith of such advertisement. Indianapolis R. Co. v. Birney, 71 Ill. 391. There can be no reasonable claim but that appellant failed to ship the appellee's cattle, contrary to its legal duty on any theory of the case. It failed to either ship at 11 o'clock or at 5 o'clock, A. M., when the regular stock train, though several hours late, passed Ashkum. To have shipped the stock at 5 o'clock would have afforded an opportunity to appellee to get his cattle in Chicago in time for markets of the 6th, or Friday. But the train passed, and no explanation is given for its failure to take the stock. The next train was due at 7 o'clock, and the conductor said he could not draw the stock car, and besides, it was too late to get it to its destination for the Friday's market, thus putting appellee in Chicago the very last day

of the week. The stock in cold weather had been loaded nearly twenty-four hours and must have been suffering from exposure. The station agent knew the facts in connection with appellee's situation, and his purposes and aims as respected the cattle, and to let the stock train pass without taking the cattle, was the highest neglect. The jury could not reasonably have found any other way than to find the appellant guilty of negligence. It is doubtful whether the verdict, everything considered, is excessive or exceeds appellee's real loss. As to the point made that it was the appellee's duty to send the stock on the 7 o'clock train to save loss and reduce damages, and not having done so, he can at least only recover such damages as he would have sustained had he followed this course, we can say, that in our opinion, the jury settled that issue. In the first place, whether the train could have taken the stock, is doubtful from the evidence. The conductor so stated, though he appeared to be willing to make the attempt. It was for the jury to say, under the evidence, whether reasonable care to avoid loss on appellee's part required him to send the cattle, or make the attempt on that day. The instructions were full and favorable to appellant on that point. The question was for the jury to decide how a reasonable man, placed in appellee's embarrassing condition, would have acted under the circumstances. It found for the appellee on that point, and we can not say unjustly. Under all the circumstances and evidence in the case, we think substantial justice had been done. Judgment affirmed.